IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| JAMIE URSULICH,<br><br>      Plaintiff,<br><br>v.<br><br>VIVINT SOLAR, INC.,<br><br>      Defendant. | **MEMORANDUM DECISION AND ORDER STAYING CASE AND GRANTING MOTION TO COMPEL ARBITRATION**<br><br>Case No. 2:21-cv-00661<br><br>District Judge Jill N. Parrish |

Before the court is a motion filed by Defendant Vivint Solar, Inc., ("Vivint") requesting that the court stay this action and compel this dispute to arbitration. (ECF No. 10.) The court GRANTS Vivint's request.

**BACKGROUND**

Plaintiff Jamie Ursulich ("Ms. Ursulich") started working for Vivint Solar in May 2011. (ECF No. 2.) In 2014, Vivint Solar restructured and started operating as Vivint Solar, Inc. (ECF No. 10.) As part of the restructuring, Vivint Solar presented Ms. Ursulich with an employment agreement ("Agreement") that contained an arbitration clause. (ECF No. 10-1.) On September 17, 2014, Ms. Ursulich signed the Agreement. (*Id.*) On November 8, 2021, Ms. Ursulich filed a complaint against Vivint alleging that Vivint had discriminated and retaliated against Ms. Ursulich in violation of 42 U.S.C. § 2000e. (ECF No. 2.) In response, Vivint filed a motion to compel arbitration pursuant to the Agreement. (ECF No. 10.)

## LEGAL STANDARD

Under section 2 of the Federal Arbitration Act ("FAA"), arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C § 2. The Supreme Court has interpreted this provision as embodying a "liberal federal policy favoring arbitration." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). Thus, when interpreting an arbitration clause in a contract, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone*, 460 U.S. at 24–25.

If the court finds that the issue can be referred to arbitration, the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3. If the opposing party refuses to proceed to arbitration, the aggrieved party "may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4.

## ANALYSIS

### I.  The Question of Arbitrability

When a court is confronted with a motion to compel arbitration, two issues arise: (1) whether the dispute is arbitrable because it is within the scope of a valid arbitration agreement and (2) who should decide whether the dispute is arbitrable. *See Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1280 (10th Cir. 2017). Courts must reach a conclusion on the second issue prior to deciding on the first. *Id.* at 1281.

The parties in this case disagree over whether the court or an arbitrator is to decide on the arbitrability of their dispute. Typically, the issue of arbitrability is a question for judicial determination. *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (citations omitted). But if the parties "clearly and unmistakably provide otherwise," then it is a question for the arbitrator. *Id.* Tenth Circuit precedent suggests that incorporation of the Judicial Arbitration and Mediation Services Inc.'s ("JAMS") Employment Arbitration Rules and Procedures ("JAMS Rules") into the arbitration agreement constitutes clear and unmistakable evidence of the parties' intent to delegate issues of arbitrability to the arbitrator. *See Belnap*, 844 F.3d at 1281–83; *Inception Mining, Inc. v. Danzig, Ltd.*, 2018 WL 565716, at *4 (D. Utah Jan. 24, 2018); *Mitchell v. Wells Fargo Bank*, 280 F. Supp. 3d 1261, 1290 (D. Utah 2017). If the court concludes that such evidence exists, "it must allow an arbitrator to decide issues of arbitrability in the first instance." *Belnap*, 844 F.3d at 1292.

The Tenth Circuit's position is based on JAMS Rule 8, which provides that "[j]urisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought . . . shall be submitted to and ruled on by the Arbitrator. The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter." JAMS, Streamlined Arbitration Rules & Procedures, Rule 8(b) (June 1, 2021); *see Belnap*, 844 F.3d at 1281. The Tenth Circuit's rationale on this incorporation issue is consistent with the position of many other circuits. *See Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015); *Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012); *Fallo v. High-Tech Inst.*, 559 F.3d 874, 878 (8th Cir. 2009); *Awuah v. Coverall N. Am., Inc.*, 554 F.3d 7, 11 (1st Cir. 2009); *Terminix Int'l Co. v.*

*Palmer Ranch Ltd.*, 432 F.3d 1327, 1332 (11th Cir. 2005); *Contec Corp. v. Remote Sol., Co.*, 398 F.3d 205, 208 (2d Cir. 2005).

Ms. Ursulich argues that the court must determine whether the parties unequivocally delegated the matter of arbitrability to the arbitrator. According to Ms. Ursulich, a conflict regarding arbitrability exists because the Agreement states that "[t]o the extent that the JAMS Rules conflict with Utah Law, Utah Law shall take precedence." (ECF No. 10-1 at 9.) Under Utah law, the court determines the enforceability of an arbitration agreement. *See* Utah Code § 78B-11-107(2); *Roberts v. Cent. Refrigerated Serv.*, 27 F. Supp. 3d 1256, 1259 (D. Utah 2014). However, the Agreement expressly incorporates the JAMS Rules, which provide that "any arbitration will be administered by [JAMS], pursuant to its Employment Arbitration Rules and Procedures . . . ." (ECF No. 10-1.) Under the JAMS Rules, the arbitrator decides the matter of arbitrability. JAMS Rule 8(b). As a result, Ms. Ursulich maintains that there is a conflict and that the court should apply Utah law to determine arbitrability.

In response, Vivint asserts that the clause reinforces its conclusion that issues of arbitrability are for the arbitrator—not the court. Clause 15(b) of the Agreement, in relevant part, states:

> I agree that the arbitrator shall issue a written decision on the merits. I also agree that the arbitrator shall have the power to award any remedies available under applicable law. I agree that the decree or award rendered by the arbitrator may be entered as a final and binding judgment in any court having jurisdiction thereof. I agree that *the arbitrator* shall administer and conduct any arbitration in accordance with Utah law, including the Utah Rules of Civil Procedure and the Utah Rules of Evidence, and that *the arbitrator shall apply substantive and procedural Utah law to any dispute or claim, without reference to rules of conflict of law.* To the extent that

> the JAMS Rules conflict with Utah law, Utah law shall take precedence.

(ECF No. 10-1 at 8–9) (emphasis added). The provision does not instruct the court to apply Utah law over the JAMS Rules in deciding arbitrability. Rather, it instructs the *arbitrator* to apply Utah law when there is a conflict. In short, it reinforces the agreement of the parties that issues of arbitrability are to be resolved by the arbitrator.

Indeed, Ms. Ursulich's request that the court decide the arbitrability of the arbitration agreement is not in accord with either the Agreement or the caselaw on this issue. Parties "clearly and unmistakably agreed to arbitrate arbitrability when they incorporated the JAMS Rules into the Agreement." *Belnap*, 844 F.3d at 1281; *see also Dish Network L.L.C. v. Ray*, 900 F.3d 1240, 1248 (10th Cir. 2018) ("incorporation of the AAA Rules provides clear and unmistakable evidence that the parties intended to delegate matters of arbitrability to the arbitrator."). Here, not only does the Agreement incorporate the JAMS Rules, but it also states that "I agree tat [sic] the arbitrator shall have the power to decide any motions brought by any party to the arbitration, including motions for summary judgment, and/or adjudication, and motions to dismiss, prior to any arbitration hearing." (ECF No. 10-1 at 9.)

Ms. Ursulich argues that despite the parties' clear intent, the court must adhere to Utah law and determine arbitrability. But to the extent that Ms. Ursulich is correct about Utah law, Utah law is displaced by the FAA. "When state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA." *AT&T Mobility*, 563 U.S. at 341; *Marmet Health Care Ctr., Inc. v. Brown*, 565 U.S. 530, 533 (2012) (invalidating "West Virginia's prohibition against predispute agreements to arbitrate personal-injury or wrongful-death claims against nursing homes" as "contrary to the terms and coverage of

the FAA."). Under the FAA, parties may stipulate to arbitrate arbitrability. *Belnap*, 844 F.3d at 1280. Under the Supremacy Clause, Utah law cannot prohibit this delegation. Thus, the court is persuaded that the matter of arbitrability should be left to the arbitrator.

In short, Ms. Ursulich's arguments that the Agreement ambiguously delegates arbitrability to the court and that the court should adhere to Utah law are inconsistent with the Agreement itself and controlling federal authority. Because the Agreement provides clear and unmistakable evidence of the parties' intent to delegate questions of arbitrability to the arbitrator, the court concludes that it must compel arbitration.

## II. Unconscionability of the Contract

Ms. Ursulich also suggests that arbitration is improper because the fee splitting provision in the Agreement is unconscionable, and therefore, renders the Agreement unenforceable. *See* ECF No. 10-1 ("I understand that the parties to the arbitration shall each pay an equal share of the costs and expenses of such arbitration, except as prohibited by law . . . .").

"Typically speaking, questions of arbitrability—such as whether an agreement is valid or enforceable, or whether a concededly binding agreement covers a particular dispute—are 'undeniably' for courts to decide." *Mitchell v. Wells Fargo Bank*, 280 F. Supp. 3d 1261, 1287 (D. Utah 2017) (internal citation omitted). "But parties may agree to submit threshold questions of arbitrability to an arbitrator." *Id.* The Agreement unequivocally incorporates the JAMS Rules, which give the arbitrator the authority to determine the "validity" of the Agreement. JAMS Rule 8(b). Whether a fee shifting provision renders the Agreement unenforceable is a question of contract validity. *Born v. Progrexion Teleservices, Inc.*, No. 2:20-CV-00107, 2020 WL 4674236, at *8 (D. Utah Aug. 11, 2020). Because the Agreement unambiguously delegates the preliminary determination of validity to the arbitrator, the court is persuaded to leave the matters of the

unconscionability of the fee shifting clause, and the resulting enforceability of the agreement to the arbitrator.

## CONCLUSION & ORDER

As the court has concluded that this matter is appropriate for arbitration, the court stays the action and orders that the parties proceed to arbitration pursuant to 9 U.S.C. §§ 3, 4. For the aforementioned reasons, the court GRANTS Defendant's motion to compel arbitration and stay the case. (ECF No. 10.)

DATED March 3, 2023.

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge